NOT FOR PUBLICATION OR CITATION

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

CIVIL ACTION NO. 07-CV-149-GFVT

WILLIAM WATSON                                                                     PETITIONER

VS:                   **MEMORANDUM OPINION AND ORDER**

HECTOR A RIOS                                                     RESPONDENT

William Watson, who is currently confined in the United States Penitentiary-Big Sandy located in Inez, Kentucky ("USP-Big Sandy"), has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in this Court. He has paid the $5.00 habeas filing fee [*see* Record No. 6].

This matter is now before the Court for screening. 28 U.S.C. § 2243; *Harper v. Thoms*, 2002 WL 31388736, *1 (6th Cir. 2002).

As Watson is appearing *pro se*, his petition is held to less stringent standards than those drafted by attorneys. *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). During screening, the allegations in his petition are taken as true and liberally construed in his favor. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001). However, a district court may dismiss a § 2241 petition at any time, or make any such disposition as law and justice require, if it determines that the petition fails to establish adequate grounds for relief. *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987).

CLAIMS

The petitioner appears to argue that his right to due process of law was violated when he was removed from his prison job at USP-Big Sandy. He demands reinstatement to his prison job. Broadly construed, his claim would fall under the Fifth Amendment if the United States.

ALLEGATIONS OF THE PETITION
1. Disciplinary Charges and Conviction

The following is a summary of the facts as explained by the petitioner. He states that in October 2005, the UNICOR staff "involuntarily" scheduled him to work overtime.[1] When he failed to report for the scheduled overtime UNICOR work, the reporting officer issued an incident report, charging him with two Bureau of Prisons ("BOP") infractions.[2] Watson was charged with: (1) refusing to work, or to accept a program assignment, under Code 306, and (2) refusing to obey an order of any staff member, under Code 307.

Petitioner states that on November 1, 2005, the incident report was delivered to the Unit Disciplinary Committee ("UDC") to conduct a hearing on the two charges against

---

[1] The straight reading of this statement is that the UNICOR staff involuntarily scheduled the petitioner to work overtime. The Court construes petitioner's true meaning of this statement to be that while the UNICOR staff intentionally scheduled the petitioner to work overtime, as far as he (petitioner) was concerned, the scheduling of overtime work was involuntary.

[2] The agency charged by Congress to manage inmate labor is Federal Prison Industries, Inc. ("FPI" or "UNICOR"). *Coalition For Government Procurement v. Federal Prison Industries, Inc.*, 365 F.3d 435, 442 (6th Cir. 2004). "UNICOR" is the commercial or "trade" name of FPI. *See* 29 C.F.R. § 345.11(a) (2007).

Watson [Record No. 2-2, p.1]. On November 3,2005, the UDC determined that Watson committed the prohibited acts and he was sanctioned to loss of his UNICOR job.

2. Initial Administrative Appeal

On November 17, 2005, the petitioner appealed the UDC's decision to the Warden [*Id*., p3]. On December 9, 2005, the Warden denied the petitioner's request for Administrative Remedy [*Id*., p.4]. Watson appealed to the BOP's Regional Director [*Id*., p.5]. On February 17, 2006, the Regional Director remanded Watson's incident report to the UDC for reconsideration of the evidence [*Id*., p. 6]  The petitioner was not happy with the Regional Director's decision to remand the case back to the UDC. He wanted the BOP to reverse the UDC's decision *in toto*, again arguing that because he did not volunteer for overtime work, he should not have been sanctioned. Petitioner appealed the Regional Director's decision to the BOP's Central Office on March 12, 2006 [*Id*., pp.7-8].

On April 24, 2007, the Administrator of the National Inmate Appeals agreed with the Regional Director's decision to remand the case back to the UDC [Id., p.9]. He noted that the petitioner was free to re-file anew any objections through the BOP's three-step process [*Id*.].

3. Remand of Disciplinary Conviction

On April 26, 2006, the UDC reconsidered the matter on remand and dismissed the charge under Code 306. The UDC upheld both the charge for violation of Code 307and its previous sanction against Watson [*Id*., p.10]. On May 23, 2006, the Warden again upheld the remand decision of the UDC [*Id*., p.13].

3

On September 13, 2006, the Regional Director, for the second time, remanded Watson's incident report to the UDC for reconsideration of the evidence [*Id.*, p.16]. The petitioner filed an appeal to the BOP's Central Office [*Id.*, p.17]. He again argued that the UDC's April 26, 2006 decision "can not stand in light if the dismissal of (Code 306)." [*Id.*]

The BOP's response, entitled "Rejection Notice" is dated December 6, 2006 [Record No. 4]. The BOP rejected the petitioner's BP-11 appeal for two reasons, the first being that his appeal was untimely [*Id*].[3] The Central Office informed the petitioner that any appeal from the Regional Director was required to be filed within thirty (30) days, including mail time. [*Id*]. The Central Office's second reason for rejecting the BP-11 appeal was as follows: "This UDC action was expunged on October 16, 2006" [*Id.*].

4. Arguments in § 2241 Petition

In his § 2241 petition, Petitioner Watson alleges that his UNICOR Supervisor's decision forcing him to work overtime was illegal. He contends that the resulting punishment, the loss of his UNICOR job, was also illegal. Petitioner explains that he is not arguing that he has a protected liberty interest in his prison job, and refers to the case of *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) which stands for that proposition.

He explains that he is not arguing that he has a due process claim in his prison job. He argues that he should not have been required to work overtime and that he was "arbitrarily"

---

[3] The Central Office's "Rejection Notice" states that the BP-11 appeal was not received until *December 1, 2006*. The petitioner's documentation indicates that his appeal to the BOP Central Office was dated *October 6, 2006* [*See* Record No. 2-2, p. 17]. If the petitioner's date is correct, the appeal would have been timely filed.

removed from his UNICOR job.  He refers to the following 1995 version of 28 C. F.R. § 345.54:

> "An inmate worker is entitled to overtime pay at a rate of two times the rate for hourly, individual, and group piece work rate workers, when the total hours worked (including administrative pay) exceed the FPI factory's regularly scheduled workday.  Hours worked on days other than the scheduled work week (e.g., Saturday) shall be compensated at the overtime rate".[4]

[Record No. 2-1, p.4]

He claims that this regulation is so vague that no federal inmate could ascertain therefrom that working overtime was a mandatory requirement.

DISCUSSION

The Court finds the record somewhat unclear as to whether the petitioner's final BP-11 appeal was timely filed.  Assuming for the moment that petitioner did submit his BP-11 on October 6, 2006 and not December 1, 2006, the Court will address the merits of his petition.

---

[4] The same wording appears in the current version of 28 C.F.R. § 345.54.

The BOP has established a work program, through which certain qualified federal inmates are allowed the opportunity to participate in prison work programs. 28 C.F.R. § 345.10. The program is known as the Federal Prison Industries, Inc., ("FPI") The FPI is a government corporation organizationally within the BOP whose mission is to provide work simulation programs and training opportunities for inmates confined in federal correctional facilities. *See* 28 C.F.R. § 345. 11(a).

As noted, the commercial or "trade" name of the FPI is UNICOR. Most FPI factories or shops are commonly referred to as "UNICOR." The Superintendent of Industries ("SOI"), also referred to as Associate Warden/Industries and Education, is responsible for the efficient management and operation of a FPI factory. 28 C.F.R. § 345.11(b).

The policy statement of the FPI program is explained in more detail in 28 C.F.R. § 345.10, which provides in relevant part:

> It is the policy of the Bureau of Prisons to provide work to all inmates (including inmates with a disability who, with or without reasonable accommodations, can perform the essential tasks of the work assignment) confined in a federal institution. Federal Prison Industries, Inc. (FPI) was established as a program to provide meaningful work for inmates. This work is designed to allow inmates the opportunity to acquire the knowledge, skills, and work habits which will be useful when released from the institution. **There is no statutory requirement that inmates be paid for work in an industrial assignment. 18 U.S.C. 4126, however, provides for discretionary compensation to inmates working in Industries.** Under this authority, inmates of the same grade jobs, regardless of the basis of pay (hourly, group piece, or individual piece rates) shall receive approximately the same compensation. All pay rates under this part are established at the discretion of Federal Prison Industries, Inc. . . .

28 C.F.R. § 345.10 (Emphasis added).

While the instant petitioner claims that he is not arguing that he has a liberty interest in maintaining his prison job, he is in fact claiming that he has a protected liberty interest in not being required to work overtime. Simply put, he contends that the BOP is not permitted to require federal inmates to work mandatory overtime. He argues that as a federal prisoner who objected to the assignment of mandatory overtime, he enjoyed certain protections, such as not being removed from his UNIOCR position. The court must reject the petitioner's reasoning.

Clearly, the above-cited regulations demonstrate that the FPI is a government authorized work program designed to accommodate the specific needs of federal inmates. It is not representative of the typical private sector employer/employee relationship. The BOP - - through the FPI - - retains complete and total control over the terms of federal prisoners' UNICOR work participation. Federal prisoners are in the custody of the BOP, and while the FPI program has valid rehabilitative aspects to it, the labors of federal inmates are of a penological nature.

Federal inmates who perform work under the auspices of the FPI can not be likened to persons in the private sector who choose to participate in the work place. *See George v. Badger State Industries*, 827 F. Supp. 584 (W.D. Wisc. 1993), where the Wisconsin district court cited *Vanskike v. Peters*, 974 F.2d 806, 809-810 (7th Cir. 1992), which had the year before declined to extend the minimum wage protections to prisoners working in the prison and for the prison.

The Wisconsin district court's opinion in *George v. Badger State Industries* is instructive in comparing inmate labor to that of an employee working within the parameters of a free-market society. The court explained as follows:

> Despite the parallels between Prison Industries and an outside employer, prisoners who perform labor remain within the matrix of prison control. This is reflected in the fact that the department determines the allocation of an inmate's earnings. Inmates who enroll in the program do so ultimately at the prerogative of the Department of Corrections' Program Review Committee. Thus, the labor relationship may be terminated for violating a prison disciplinary rule. All this is to say that labor performed in the prison for the prison or even for a separate state entity operated by the Department of Corrections is labor performed as part of a sentence of incarceration. The Court noted in *Harker*:
>
>> Because inmates are involuntarily incarcerated, the DOC wields virtually absolute control over them to a degree simply not found in the free labor situation of true employment. *Vanskike*, 974 F.2d at 809-10. Inmates may voluntarily apply for SUI [State Use Industries] positions, but they certainly are not free to walk off the job site and look for other work. When a shift ends, inmates do not leave DOC supervision, but rather proceed to the next part of their regimented day. *Harker*, 990 F.2d at 133.

*George v. Badger State Industries,* 827 F.Supp. at 588. *See also Harker v. State Use Industries*, 990 F.2d 131, 135 (4th Cir. 1993) (collecting cases and declining to apply the economic reality test when alleged employer is a state-structured prison industries program); and *Hudgins v. Hart*, 323 F.Supp. 898, 899 (E.D. La. 1971) (holding that an inmate working for a private employer inside prison was not an "employee" because the prison controlled the inmates' labor).

While the petitioner does not specifically mention the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.*, 206(a)(1) ("the FLSA"), any analogy to rights

8

provided to private sector employees under that scheme would not be accurate. An employer-employee relationship does not exist between the state and an inmate for purposes of the federal FLSA. *See Lentz v. Anderson*, 888 F. Supp. 847, 849 (N.D. Ohio, 1995) (where the prison controlled and logged where each prisoner was during the day, prison selected which inmates worked and determined the hours and nature of work, and the only contract involved was a contract between the prison and a private business, not the prison and the inmate, an employer-employee relationship, subject to the minimum wage requirements of the FLSA, did not exist between the state and an inmate); *Sims v. Parke Davis & Co.*, 334 F. Supp. 774, 782 (E.D. Mich. 1971) (inmates working at a private drug clinic inside the prison were not covered by the FLSA).

      Clearly, the FPI regulations provide for additional compensation to be paid for "overtime" work performed, at two times the hourly or unit rate for hourly, individual, and group piecework rate workers. 28 C.F.R. § 345.54. None of the FPI regulations *prohibit* the BOP from requiring federal UNICOR inmates to work overtime.

      Finally, *Newsom v. Norris*, 888 F.2d 371, which the petitioner dismisses as irrelevant to this proceeding, is actually quite dispositive. That decision cites numerous other decisions which hold that the United States Constitution does not create a property or liberty interest in prison employment. *Newsom*, 888 F.2d at 374 (citations omitted). While the cases which reach this same conclusion are too numerous to mention, the Court will list a few: *Garza v. Miller*, 688 F.2d 480, 486 (7th Cir. 1982), *cert. denied*, 459 U.S. 1150 (1983); *Bulger v. United States Bureau of Prisons*, 65 F.3d 48, 49-50 (5th Cir. 1995) (Bulger's termination

from his UNICOR job and reassignment to a non-UNICOR job did not impose an atypical and significant hardship on him in relation to the ordinary incidents of prison life); *Karacsonyi v. Radloff*, 885 F. Supp. 368 (N.D.N.Y. 1995) (federal inmate's construed *Bivens* action involving his inmate job was properly dismissed; prison officials have broad discretion in denying federal inmates the opportunity to participate in UNICOR and federal prisoner's participation in UNICOR did not confer liberty interest sufficient to trigger a constitutional due process protection); and *Phipps v. Federal Prison Industries, Inc.*, 1987 WL 38286 at *1 (6th Cir. July 31, 1987)(holding that "a plaintiff has no property or liberty interest in federal prison employment which would entitle him to protection under the Due Process Clause.").

In summary, the petitioner enjoyed no protected liberty interest in maintaining his UNICOR job. To the extent that he seeks relief in the form a writ of habeas corpus requiring the respondent to reinstate him to that job, the § 2241 petition will be dismissed for failure to state a meritorious claim. 28 U.S.C. § 1915(e)(2)(ii)

CONCLUSION

Accordingly, **IT IS ORDERED** as follows:

(1) William Watson's § 2241 petition for habeas corpus [Record No. 2] is **DENIED** and this action is **DISMISSED WITH PREJUDICE**, *sua sponte,* from the docket of the Court.

(2) Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of Hector Rios, the named respondent.

This the 21st day of September, 2007.



Signed By:
*Gregory F. Van Tatenhove*
United States District Judge

11